PHILIP DOHERTY's (dependent's) CASE.

RALPH TUPPER's (dependent's) CASE.

Suffolk.    February 3, 24, 1936. — May 25, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Workmen's Compensation Act,* Employee of independent contractor. *Words,* "Premises."

A claim under the workmen's compensation act, based on the death of the driver of a motor truck when it left a public highway, could not be maintained where it appeared that the driver's employer, not a subscriber under the act, had furnished the truck under a contract to one who was a subscriber for use in the subscriber's business of transporting merchandise on the public ways as a carrier: the public ways were not premises "on which the contractor . . . [had] undertaken to execute the work for the insured" within the last sentence of § 18 of G. L. (Ter. Ed.) c. 152.*

* See footnote, *infra,* page 365.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board in consolidated proceedings awarding compensation to each claimant.

In the Superior Court, by order of *Dowd*, J., a decree was entered in accordance with the decision of the board. The insurer appealed.

*G. Gleason*, for the insurer.

*D. H. Fulton*, for the claimant Doherty.

*C. A. McCarron*, for the claimant Tupper.

QUA, J. On the night of June 22–23, 1934, Doherty and Tupper were in the employ of one Albertini driving his truck from Albany, New York, to Boston. Albertini had a contract with Motor Express Agency, Inc., by which he was to furnish to that corporation two large semi-trailer trucks with operators to make round trips between the two cities. Motor Express Agency, Inc., was in the business of transporting merchandise as a carrier between Boston and Albany, using for that purpose the trucks which it hired from independent contractors. It was a subscriber under the workmen's compensation act, G. L. (Ter. Ed.) c. 152. Albertini was not a subscriber. Doherty and Tupper were carrying a load for Motor Express Agency, Inc., under the contract of their employer Albertini. Shortly after midnight as they were descending a grade on a curve on the east side of Lebanon Mountain in the town of Hancock the semi-trailer truck left the road, tore through the fence and ran down the embankment, where it turned over and burst into flames. Both Doherty and Tupper perished in the wreck.

Although the immediate employer of the deceased workmen was not insured under the act, it is the contention of their dependents, the present claimants, that if the deceased had been employed directly by Motor Express Agency, Inc., they would have been entitled to compensation, that their employer, Albertini, had entered into a contract to do the express agency's work and therefore that the express agency's insurer became liable to the claimants under G. L. (Ter. Ed.) c. 152, § 18. The material portions

of that section read as follows: "If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons. . . . This section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured, nor to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured." *

No witnesses testified as to how the accident occurred, and its precise cause is left in doubt. We need not, however, discuss the question whether the evidence was sufficient to support the finding of the board that the deaths arose out of and in the course of the employment, because it is plain that these claimants have no rights to compensation unless they are able to bring their cases within said § 18, and we think these cases are excluded from the benefit of that section by the language of its last sentence.

The injury occurred on or about the public highway. Certainly the highway was not "under the control or management of the insured." But the claimants strongly urge that the highway was "the premises" on which the contractor had "undertaken to execute the work for the insured." We can appreciate the force of the argument that the purpose of § 18 was to prevent evasion of the act by the letting out of work to irresponsible and uninsured con-

---

* Since this report is being published after the enactment of St. 1938, c. 102, amending the above section in the respect to which the decision relates, it seems proper to refer to that amendment. — REPORTER.

tractors, *White* v. *George A. Fuller Co.* 226 Mass. 1, 4, and that such evasion would be possible with respect to the work of transportation on the highways as well as with respect to the work of construction or manufacture in particular locations. But it is our task to discover the sense in which the words were used when the section was passed. It is not for us to attempt by construction to develop a more comprehensive or more logical system of compensation than that which was in fact enacted. Confining ourselves strictly to the field of construction, we cannot believe that the words "the premises on which the contractor has undertaken to execute the work for the insured" were intended to include possibly hundreds of miles of public highway on which the contractor has not undertaken to execute any work except that which involves merely travel and transportation in common with the rest of the public.

The primary meaning of the word "premises" as indicated by its derivation is "that which is sent before" or "that which is placed first." Apparently it came to be used in a secondary sense to denote lands and tenements because all that part of a deed which came before the *habendum* and therefore included the description of the lands conveyed was called the premises. As denoting location on the earth's surface the word originally had and as now commonly used still has reference to lands or buildings regarded as separate units or entities, with differing characteristics, presumably occupied separately and bounded or limited in some manner and distinguished from other lands or buildings. See *Sumner* v. *Williams*, 8 Mass. 162, 174; *Wright* v. *Dressel*, 140 Mass. 147, 149; *Old South Association* v. *Codman*, 211 Mass. 211, 216; *Urban* v. *Simes*, 259 Mass. 336; *Wadman* v. *Boudreau*, 270 Mass. 198, 202; *DePrizio* v. *F. W. Woolworth Co.* 291 Mass. 143, 146. "The premises" is not an apt expression to designate areas devoted to public ways all of which together form one continuous system. *Gile* v. *Yellow Cab Corp.* 177 Minn. 579, 583. *New York Central & Hudson River Railroad* v. *Buffalo,*

218 N. Y. 259. *E. W. Hallet Construction Co.* v. *Industrial Commission*, 201 Wis. 182.

If the claimants' argument founded upon the general purpose and intent of compensation acts is sound, it would seem that it ought also to apply if Albertini had contracted to carry loads by water or even by airplane instead of by the highway. But we suppose it would hardly be contended that navigable waters or the sky constituted "the premises" on, in or about which the contractor had undertaken to execute the work. Nor can the truck itself on which the deceased persons were riding be deemed "the premises." Except possibly when used in some peculiar context, "premises" does not include personal property. *Casey* v. *Boston Elevated Railway*, 255 Mass. 33. *Carr* v. *Roger Williams Ins. Co.* 60 N. H. 513, 520. *Staley* v. *People*, 78 Colo. 67. Moreover, if the intent had been to grant to employees of a contractor or subcontractor rights as extensive as those granted to direct employees of the insured with respect to the kind of work described in § 18, no limitations whatever based upon the place of the injury would have been imposed.

The words of § 18 here involved were copied with slight changes from the English act of 1906. This circumstance gives special force to previous decisions of the English courts as authoritative interpretations of the language used. *Corbett's Case*, 270 Mass. 162, 165. About three years before the passage of our act the Court of Appeal in *Andrews* v. *Andrews*, [1908] 2 K. B. 567, held that the death of an employee of a subcontractor engaged in carting materials which it was the duty of the general contractor to remove, resulting from an accident in the public street two miles from the location where the general contractor was performing a paving contract did not occur "on, or in, or about premises" on which the principal contractor had undertaken to execute the work. The reasoning of the justices as well as the decision of the case tends strongly against the claimants. This is the only case we have seen in which the very words in question have been construed.

See, however, *Halpin* v. *Industrial Commission*, 319 Ill. 130; *Employers' Liability Assurance Corp. Ltd.* v. *Hereford*, 209 Ky. 188; *Shickley* v. *Philadelphia & Reading Coal & Iron Co.* 274 Penn. St. 360. Our own cases in which § 18 was mentioned were decided on grounds which do not touch the present problem. See *Comerford's Case*, 229 Mass. 573. *Tierney* v. *Southwestern Bell Telephone Co.* 114 Kans. 706, cited by the claimants, differs substantially from this case.

·The commission which framed our compensation act seems to have assumed as correct a construction of the present § 18 which would exclude from compensation thereunder persons injured while travelling on public ways. In their report they speak of this section (§ 17 of the original act, St. 1911, c. 751, Part III) as providing "that an employer shall be liable to pay compensation to employees of. a contractor who is performing part of the work of the employer on the premises of the employer or on premises under his control." Report of Mass. Commission on Compensation for Industrial Accidents, 1912, page 52.

We do not mean to intimate that if the contractor has engaged to perform work in or upon the highway itself, such as construction of the way, paving, laying pipes or other work which is distinct from the use of the way for purposes of travel, those portions of the way upon which such work is actually done might not be deemed to be "the premises on which the contractor has undertaken to execute the work" under § 18. We now decide only that § 18 does not apply to work on a public way which consists merely in using the way under the public right for the purpose of travel.

It follows that in each case the decree should be reversed and a decree should be entered for the insurer.

*So ordered.*